TAYLOR v CURRIE

Docket Nos. 269684 and 271559. Submitted September 11, 2007, at Detroit.
  Decided October 25, 2007, at 9:00 a.m. Leave to appeal sought.

Maureen D. Taylor brought an action in the Wayne Circuit Court
  against Detroit City Clerk Jackie Currie, the Detroit Election
  Commission, and Marino Taylor, alleging multiple election impro-
  prieties with regard to a 2005 primary and general election,
  including the intended mailing of approximately 150,000 unsolic-
  ited applications for absent voter ballots. The court, Mary Beth
  Kelly, J., determined that the city clerk was statutorily precluded
  from sending unsolicited absent voter ballot applications and
  enjoined such action. The mailing nonetheless occurred and the
  court found Currie in criminal contempt of court, imposed a $250
  fine, ordered a proposed plan for oversight of the election, and
  ordered the appointment of two monitors to conduct an investiga-
  tion into the circumstances surrounding the mailing and to review
  the handling of the absent voter ballots from the primary election.
  The parties stipulated the dismissal of Marino Taylor. The Court of
  Appeals, TALBOT, P.J., and MURRAY and FORT HOOD, JJ., considered
  the defendants' application for leave to appeal, denied leave to
  appeal with regard to the $250 fine, and, in lieu of granting leave
  to appeal, vacated the remainder of the trial court's order impos-
  ing penalties and remanded the matter to the trial court for
  further proceedings. Unpublished order of the Court of Appeals,
  entered October 28, 2005 (Docket No. 265982). On remand, the
  trial court entered a new temporary restraining order and there-
  after a preliminary injunction and, following its determination
  that the order and the injunction had been violated, amended the
  preliminary injunction. The plaintiff then moved for a final
  declaratory judgment and an award of attorney fees. The trial
  court issued an opinion and order granting declaratory relief,
  entered a permanent injunction against the mailing of unsolicited
  applications for absent voter ballots, and awarded the plaintiff
  attorney fees. The defendants brought an appeal that challenged
  the permanent injunction and the finding of criminal contempt,
  and that questioned the court's authority to appoint the monitors
  and coreceivers. The defendants also brought a separate appeal
  from the award of attorney fees. The appeals were consolidated.

The Court of Appeals *held*:

The permanent injunction against the mass mailing of unsolicited applications for absent voter ballots and the ruling that the plaintiff is entitled to an award of attorney fees must be affirmed, but the order awarding attorney fees must be vacated and the matter must be remanded for the recalculation of the award.

1. MCL 168.759(5) does not permit a city clerk to mail absent voter ballot applications without having received a verbal or written request for them. The clerk has no powers concerning the distribution of ballot applications that are not expressly granted in the statute and the power to mail unsolicited ballot applications is not expressly stated in the statute. The statute does not implicitly permit the clerk to mail unsolicited absent voter ballot applications. The court did not err in granting injunctive relief on this basis.

2. Currie is not entitled to appeal as of right the conviction of criminal contempt because the Court of Appeals previously denied Currie's application for leave to appeal regarding her conviction for lack of merit.

3. The issues raised regarding the appointment of monitors and receivers are moot and need not be considered by the Court of Appeals.

4. MCL 600.1721 authorizes a trial court to order an award of attorney fees as a remedy for criminal contempt even if the court imposes a punitive sanction on the contemnor. The court properly ordered the defendants to indemnify the plaintiff for the losses suffered as a result of the defendants' contemptuous conduct.

5. The trial court made sufficient findings addressing the reasonableness of the attorney fees requested by the plaintiff. However, the award of attorney fees must be vacated to the extent that it included fees for matters not directly relating to the defendants' making of the mass mailing in violation of the court's order and the matter must be remanded for a recalculation of the award.

Affirmed in part, vacated in part, and remanded.

SMOLENSKI, P.J., concurring in part and dissenting in part, agreed with the majority decision except with regard to the part that holds that MCL 168.759 implicitly prohibits clerks from mailing unsolicited applications for absent voter ballots, and he would not address whether a clerk has such inherent authority because the trial court did not base its holding on an inherent-authority theory. The permanent injunction should be vacated because it was based on an erroneous interpretation of the statute. MCL 168.759(1) and (2) deal with the procedures for requesting an absent voter ballot rather than the procedures for requesting an

application for an absent voter ballot and therefore do not support an implicit limitation on the distribution of applications for absent voter ballots. MCL 168.759(3) applies to the manner by which an elector may request an absent voter ballot, rather than the manner by which an elector may request an application for an absent voter ballot and does not support an implicit limitation on the manner by which applications for absent voter ballots may be distributed. MCL 168.759(5) only requires a clerk to distribute applications for an absent voter ballot when a person makes a verbal or written request and does not require a clerk to distribute the applications under any other circumstances. It cannot be inferred under the maxim *expressio unius est exclusio alterius* that the Legislature, by its silence, intended to prohibit clerks from providing applications for absent voter ballots to persons without the oral or written request of such persons.

1. ELECTIONS — ABSENT VOTER BALLOT APPLICATIONS.

    A clerk of a city, township, or village must furnish an absent voter ballot application form to anyone upon a verbal or written request; a clerk may not mail applications to persons who have not requested such applications (MCL 168.759).

2. CONTEMPT — MOTIONS AND ORDERS — INDEMNITY.

    A court must order a person found to be in civil or criminal contempt of court to indemnify any person who suffers an actual loss or injury as a result of the contemnor's misconduct; the sum required may include attorney fees that occurred as a result of the contemptuous conduct; indemnification is required even when a trial court imposes a punitive sanction on the contemnor (MCL 600.1721).

*Constitutional Litigation Associates, P.C.* (by *Hugh M. Davis*), and *Law Offices of Stephen F. Wasinger* (by *Stephen F. Wasinger*), for the plaintiff.

*City of Detroit Law Department* (by *John E. Johnson*, Corporation Counsel, and *Linda D. Fegins*, Senior Assistant Corporation Counsel) for the defendants.

Amicus Curiae:

*Edward M. Thomas,* Wayne County Corporation Counsel, and *Colleen S. Pacler,* Assistant Corporation Counsel, for the Wayne County Clerk.

Before: SMOLENSKI, P.J., and WHITBECK, C.J., and KELLY, J.

KELLY, J. In these consolidated appeals arising from an action for declaratory judgment, defendants Jackie Currie and the Detroit Election Commission (hereafter defendants) appeal as of right several trial court orders. In Docket Number 269684, defendants claim that the trial court (1) erred when it permanently enjoined defendants from mailing unsolicited applications for absent voter ballots to qualified voters, (2) improperly entered an order holding defendant Jackie Currie in criminal contempt of court, and (3) lacked the authority to appoint monitors and coreceivers over the November 2005 election proceedings. In Docket Number 271559, defendants contend that the trial court erred in its determination that plaintiff was entitled to attorney fees associated with Currie's contempt proceedings. We affirm the trial court's permanent injunction against the mass mailing of unsolicited applications for absent voter ballots. We also affirm the trial court's ruling that plaintiff was entitled to attorney fees, but we vacate the order awarding attorney fees and remand for recalculation of the award.

I. FACTS AND PROCEDURAL HISTORY

2005 was a regularly scheduled election year in the city of Detroit's four-year cycle. Currie, who was the Detroit City Clerk and a member of the Detroit Election Commission, was a candidate for reelection. In prior election years, Currie authorized a mass mailing of absent voter ballot applications to potential absentee voters. In addition to the application, Currie enclosed a cover letter, signed by her and referring to herself as "the City Clerk and Chairperson of the Election Commission."

Plaintiff Maureen D. Taylor, a candidate for the Detroit City Council, appeared on the ballot for the August 2, 2005, primary, but she did not obtain enough votes to qualify for the November 2005 general election. In August 2005, plaintiff sued Currie, the commission, and defendant Marino Taylor (Marino), alleging multiple election improprieties.[1] Plaintiff alleged that Marino was a false candidate wrongfully certified by the commission to confuse voters and dilute plaintiff's votes. Plaintiff also alleged that Currie and the commission improperly mailed approximately 150,000 applications for absent voter ballots. Plaintiff further claimed that the elections staff failed to properly process the submitted absent voter ballots. Plaintiff asserted that these irregularities prevented her from qualifying to appear on the general election ballot.

On August 26, 2005, plaintiff filed a motion for a preliminary injunction or temporary restraining order to prevent defendants from mailing approximately 150,000 applications for absent voter ballots, which were scheduled to be mailed on Monday, August 29, 2005. The trial court determined that Currie, as the Detroit City Clerk, was statutorily precluded from sending out unsolicited absent voter ballot applications. Accordingly, the trial court granted plaintiff's motion and enjoined "the City of Detroit from using a bulk mailing and from allowing the unsolicited mailing of absentee voter ballot applications in the general election." The court gave the parties until 2:00 p.m. on Tuesday, September 6, 2005, to submit an order.

After learning that the mailing had nonetheless occurred, plaintiff moved for an order to show cause why defendants should not be held in contempt for

---

[1] In April 2006, the parties stipulated the dismissal of the claims against Marino. Marino did not participate in this appeal.

violating the court's injunction. Plaintiff also asked the trial court to appoint a receiver over the commission and order various other forms of relief. In response to plaintiff's motion, defendants argued that the court lacked authority to appoint a receiver over the office of City Clerk and that plaintiff was not entitled to the requested alternative forms of relief. Defendants argued that Michigan law provides sufficient safeguards and remedies to redress the allegations. Defendants also argued that, because the trial court never entered a written injunction prohibiting the mailing, there was no order to enforce through contempt proceedings.[2]

On September 28, 2005, the court granted plaintiff's request for a show cause hearing and secured Currie's presence for a contempt proceeding. After taking evidence and testimony, the trial court found that Currie had acted in contempt of the trial court's injunction against the mailing. On the following day, the trial court conducted a hearing to determine a remedy for Currie's contempt. The trial court ultimately fined Currie $250,[3] ordered a proposed plan for oversight of the November election by the Secretary of State and the Wayne County Clerk, and ordered the appointment of two monitors to conduct an investigation into the circumstances surrounding the mailing and review the handling of the absent voter ballots from the August primary.

Defendants applied for leave to appeal this order on October 24, 2005. This Court granted defendants' motion for immediate consideration and ordered:

---

[2] As a formality, the trial court signed a written preliminary injunction on October 3, 2005.

[3] At that time, this was the maximum fine that could be imposed under MCL 600.1715(1). The maximum fine has since been increased to $7,500. See 2006 PA 544.

As to the imposition of a $250 fine in the October 11, 2005, order of criminal contempt, the Court orders that the application for leave to appeal is DENIED for lack of merit in the grounds presented.

Pursuant to MCR 7.205(D)(2), in lieu of granting leave to appeal, the Court VACATES the remainder of the October 11, 2005 order because the contempt statute, MCL 600.1715, contains no authority for the additional penalties imposed, and the plaintiff has not provided any additional law allowing such penalties for criminal contempt. . . . Thus, to the extent that the penalties, aside from the fine, are predicated on the contempt statute, MCL 600.1715, they are null and void. The case is REMANDED to the circuit court for further proceedings consistent with this order. [*Taylor v Currie*, unpublished order of the Court of Appeals, entered October 28, 2005 (Docket No. 265982).]

In response to this order, plaintiff asked the trial court to enter a new temporary restraining order compelling defendants to comply with the plan for supervision of the election process described in the order of October 11, 2005. On October 28, 2005, the trial court entered a new temporary restraining order. The order enjoined defendants from "using clerks agents or assistants, including Ambassadors or Building Managers, to contact voters or to provide voter assistance unless first contacted by an individual voter." The order also barred the practice of using building managers or third parties as clerk assistants for "the purpose of the delivery or receipt of absentee ballot applications or absentee ballots." Additionally, the order imposed several record-keeping requirements concerning persons who assist voters in voting by absent voter ballot.

On November 3, 2005, the trial court issued a preliminary injunction incorporating the provisions of the temporary restraining order of October 28, 2005, and delineating the record-keeping requirements for persons assisting voters with absent voter ballots. The

order also appointed the previously selected monitors to investigate the circumstances surrounding the mass mailing, investigate the handling of absent voter ballots from the primary election, and oversee compliance with the injunction.

On the following day, the trial court held an unscheduled hearing concerning "allegations of violations of [the] preliminary injunction that was issued yesterday." After hearing testimony by two witnesses concerning alleged election improprieties, the trial court concluded that there was a violation of the temporary restraining order of October 28, 2005, and the preliminary injunction entered on November 3, 2005. The trial court indicated that the violation required remedial measures and agreed that the ambassador program should be suspended. In addition, the court indicated that it would appoint coreceivers to supervise the absentee ballot portion of the general election. On November 7, 2005, the trial court entered an order officially amending the preliminary injunction to appoint coreceivers to oversee the absent voter ballot collection and counting process during the November 8, 2005, general election.

On January 13, 2006, plaintiff moved for a final order adjudicating the rights of the parties and imposing a permanent injunction against the mailing of unsolicited applications for absent voter ballots. Plaintiff also requested an award of attorney fees incurred as a result of defendants' contemptuous behavior. Because Currie was not reelected as city clerk, plaintiff dropped all further requests for relief. On January 27, 2006, defendants responded by moving for summary disposition. Defendants argued that because the election was now final and the composition of the commission had changed, plaintiff's requests for relief were mooted.

Defendants also argued that there was no authority supporting an award of attorney fees to plaintiff.

On February 17, 2006, the trial court conducted a hearing on plaintiff's motion for a final order and defendants' motion for summary disposition. At the close of the hearing, the trial court indicated that it would issue a permanent injunction against the mailing of unsolicited applications for absent voter ballots, but would dismiss all plaintiff's remaining substantive claims. The court also determined that plaintiff was entitled to an award of attorney fees under MCL 600.1721.

On March 23, 2006, the trial court issued an opinion and order granting declaratory relief, entering a permanent injunction, and granting in part defendants' motion for summary disposition. On June 20, 2006, the trial court ordered defendants to pay a total of $91,063 in costs and attorney fees to plaintiff. These appeals followed.

## II. UNSOLICITED MAILINGS OF ABSENT VOTER BALLOT APPLICATIONS

Defendants first contend that the trial court erred when it ruled that MCL 168.759 prohibits city clerks from mailing unsolicited applications for absent voter ballots to prospective voters and permanently enjoined this activity. We disagree.

This Court reviews a trial court's decision to grant injunctive relief for an abuse of discretion. *Kernen v Homestead Dev Co*, 232 Mich App 503, 509-510; 591 NW2d 369 (1998). An abuse of discretion occurs when a trial court's decision is not within the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

This issue also involves interpretation of MCL 168.759. We review issues of statutory interpretation de novo. *Hamilton v AAA Michigan*, 248 Mich App 535, 540; 639 NW2d 837 (2001). "The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature." *Id.* at 541. "The first criterion in determining legislative intent is the specific language of the statute. . . . If the plain and ordinary meaning of the language is clear, judicial construction is neither necessary nor permitted . . . ." *Id.* If the language is ambiguous, this Court must strive to give effect to the intent of the Legislature by applying a reasonable construction, considering the purpose of the statute and the object it seeks to accomplish. *Macomb Co Prosecutor v Murphy*, 464 Mich 149, 158; 627 NW2d 247 (2001).

MCL 168.759(5) provides, in relevant part, that "[t]he clerk of the city, township, or village shall have absent voter ballot application forms available in the office of the clerk at all times and shall furnish an absent voter ballot application form to anyone upon a verbal or written request." This subsection clearly addresses the distribution of applications for absent voter ballots. Under a plain reading, this subsection establishes two duties for city clerks. First, the clerk must have applications for absent voter ballots available in the clerk's office at all times. Second, the clerk "shall" provide an application to anyone upon verbal or written request.

" 'The general rule, with regard to municipal officers, is that they have only such powers as are expressly granted by statute or by sovereign authority or those which are necessarily to be implied from those granted.' " *Presnell v Wayne [Co] Bd of Co Rd Comm'rs*, 105 Mich App 362, 368; 306 NW2d 516 (1981), quoting

56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions, § 276, p 327. Or as our Supreme Court has stated, "[t]he extent of the authority of the people's public agents is measured by the statute from which they derive their authority, not by their own acts and assumption of authority." *Sittler v Michigan College of Mining & Tech Bd of Control*, 333 Mich 681, 687; 53 NW2d 681 (1952) (citations and punctuation omitted). As such, "[p]ublic officers have and can exercise only such powers as are conferred on them by law . . . ." *Id.* (citations and punctuation omitted).

Applying this rule to MCL 168.759, it is clear that the city clerk has no powers concerning the distribution of ballot applications other than those that are expressly granted in the statute. And the power to mail unsolicited ballot applications to qualified voters is not expressly stated anywhere in this statute. Nor have appellants cited any other statute that confers this power on the city clerk.

As for whether the mass mailing of unsolicited ballot applications is implicitly authorized by statute, we conclude that it is not. First, a power is necessarily implied if it is essential to the exercise of authority that is expressly granted. *Conlin v Scio Twp*, 262 Mich App 379, 385; 686 NW2d 16 (2004). The authority expressly granted in MCL 168.759(5) is that the clerk must have applications for absent voter ballots available in the clerk's office at all times and that the clerk "shall" provide an application to anyone upon verbal or written request. The mass mailing of unsolicited ballot applications is not essential to the clerk's either making ballot applications available in the clerk's office or to providing them upon request. Second, on the basis of the maxim *expressio unius est exclusio alterius* (the expres-

sion of one thing is the exclusion of another), *Feld v Robert & Charles Beauty Salon*, 435 Mich 352, 362; 459 NW2d 279 (1990) (opinion by RILEY, C.J.), we read the statute to preclude mass mailings when it specifically states that the clerk shall provide the applications upon written or verbal request. "[W]hen a statute limits a thing to be done in a particular mode, it includes a negative of any other mode." *Christensen v Harris Co*, 529 US 576, 583; 120 S Ct 1655; 146 L Ed 2d 621 (2000) (citation and punctuation omitted). Accordingly, we conclude that MCL 168.759(5) does not implicitly permit the city clerk to mail absent voter ballot applications without having received a verbal or written request.

This interpretation of MCL 168.759 is consistent with the sound public policy behind Michigan's election law, which, as stated in the preamble, was enacted, in part, "to provide for the purity of elections; to guard against the abuse of the elective franchise."[4] This is in keeping with the Michigan Constitution, which provides that "[t]he legislature shall enact laws to preserve the purity of elections . . . ." Const 1963, art 2, § 4. The Michigan Supreme Court has interpreted the "purity of elections" clause to embody two concepts: "first, that the constitutional authority to enact laws to preserve the purity of elections resides in the Legislature; and second, 'that any law enacted by the Legislature which adversely affects the purity of elections is constitutionally infirm.' " *Socialist Workers Party v Secretary of State*, 412 Mich 571, 596; 317 NW2d 1 (1982), quoting *Wells v Kent Co Bd of Election Comm'rs*, 382 Mich 112,

---

[4] A preamble is not binding authority for construing an act, but this Court has recognized that a preamble can be useful for interpreting statutory purpose and scope. *King v Ford Motor Credit Co*, 257 Mich App 303, 311-312; 668 NW2d 357 (2003).

123; 168 NW2d 222 (1969). The phrase "purity of elections" "requires . . . fairness and evenhandedness in the election laws of this state." *Socialist Workers Party*, *supra* at 598.

The city clerk, who is an elected official, has the role of neutral arbiter or referee. As a requirement of that office, the city clerk must take and subscribe an oath or affirmation stating:

> I do solemnly swear (or affirm) that I will support the Constitution of the United States and the constitution of this state, and that I will faithfully discharge the duties of the office of [city clerk] according to the best of my ability. [Const 1963, art 11, § 1.]

To construe MCL 168.759 to permit Currie to distribute, in her official capacity, what amounts to propaganda at the city's expense is certainly not within the scope of Michigan election laws or the Michigan Constitution. MCL 168.759(5) does not permit a city clerk to mail absent voter ballot applications without having received a verbal or written request. Accordingly, we conclude that the trial court did not err in granting injunctive relief on this basis.

### III. CRIMINAL CONTEMPT

Defendants next argue that Currie's conviction of criminal contempt must be reversed because there was insufficient evidence that she acted in contempt of an enforceable order of the court and because she was not provided with various safeguards required by due process.

Currie was convicted of criminal contempt after a hearing held on September 28, 2005. The trial court entered the order finding Currie in criminal contempt and sentencing her to pay a fine of $250 on October 11,

2005. Because it was a criminal conviction, Currie was entitled to an appeal as of right from the October 11, 2005, order and sentence. However, rather than appeal her conviction and sentence as of right, Currie filed an application for leave to appeal in this Court on October 24, 2005. On October 28, 2005, this Court denied in part leave to appeal the October 11, 2005, order of criminal contempt. In lieu of granting leave to appeal her sentence, this Court vacated a portion of Currie's sentence and remanded the matter for further proceedings. Although this Court remanded the matter, it is clear from the order that this Court denied leave to appeal on the substantive portions of Currie's appeal regarding her conviction of criminal contempt for lack of merit. "In a criminal case, the defendant may not file an application for leave to appeal from a judgment of conviction and sentence if the defendant has previously taken an appeal from that judgment by right or leave granted or has sought leave to appeal that was denied." MCR 7.205(F)(2). Because Currie has already taken an appeal, she is not entitled to another.[5]

### IV. THE TRIAL COURT'S APPOINTMENT OF MONITORS AND RECEIVERS

Defendants next argue that the trial court was without authority to appoint monitors and receivers for the November 2005 election proceedings. As a result of defendants' failure to comply with the trial court's injunctions, the trial court appointed special monitors to investigate certain conduct and eventually appointed receivers to oversee the collection and processing of absent voter ballots during the November 2005 elec-

---

[5] Once this Court denied leave in part for lack of merit, Currie had to either move for reconsideration of this Court's order, MCR 7.215(I), or file an application for leave to appeal in our Supreme Court, MCR 7.302.

tion. However, because the monitors completed their investigation and the receivers completed their oversight responsibilities before this appeal, even if this Court were to conclude that the trial court exceeded its authority, it would not be able to remedy the error. Therefore, these issues are moot. *In re Contempt of Dudzinski*, 257 Mich App 96, 112; 667 NW2d 68 (2003). And although there is a possibility that future litigants will again dispute the extent of a trial court's power to fashion equitable remedies for contempt and to appoint receivers, there is no indication that this issue will likely evade this Court's review. *Federated Publications, Inc v City of Lansing*, 467 Mich 98, 112; 649 NW2d 383 (2002), clarified in part on other grounds in *Herald Co, Inc v Eastern Michigan Univ Bd of Regents*, 475 Mich 463, 470-472; 719 NW2d 19 (2006). Therefore, we decline to address these claims of error.

## V. ATTORNEY FEES

We next address defendants' arguments concerning the trial court's award of attorney fees to plaintiff.

### A. STANDARD OF REVIEW

"The decision to award attorney fees, and the determination of the reasonableness of the fees requested, is within the discretion of the trial court." *Windemere Commons I Ass'n v O'Brien*, 269 Mich App 681, 682; 713 NW2d 814 (2006). If the trial court's decision results in an outcome within the range of principled outcomes, it has not abused its discretion. *Maldonado, supra* at 388. Any findings of fact on which the trial court bases an award of attorney fees are reviewed for clear error. *Solution Source, Inc v LPR Assoc Ltd Partnership*, 252 Mich App 368, 381; 652 NW2d 474 (2002).

B. AUTHORIZATION OF ATTORNEY FEES FOR CRIMINAL CONTEMPT

Defendants first argue that MCL 600.1721 does not authorize a trial court to order an award of attorney fees as a remedy for criminal contempt. We disagree. MCL 600.1721 provides that, "[i]f the alleged misconduct has caused an actual loss or injury to any person the court shall order the defendant to pay such person a sufficient sum to indemnify him, in addition to the other penalties which are imposed upon the defendant." Thus, under a plain reading of MCL 600.1721, a court must order a person found to be in contempt of court to indemnify any person who suffers an actual loss or injury as a result of the contemnor's misconduct. See *In re Contempt of Rochlin*, 186 Mich App 639, 650; 465 NW2d 388 (1990). The sum required by MCL 600.1721 "may include attorney fees that occurred as a result of the other party's contemptuous conduct." *Homestead Dev Co v Holly Twp*, 178 Mich App 239, 246; 443 NW2d 385 (1989).

Because MCL 600.1721 does not make a distinction between civil and criminal contempt, but rather requires a trial court to order a contemnor to indemnify any person who suffers an "actual loss or injury" caused by the contemnor's "misconduct," we hold that the indemnification sanction mandated by MCL 600.1721 applies even when a trial court imposes a punitive (i.e., criminal) sanction on a contemnor. The trial court did not err when it ordered defendants to indemnify plaintiff for the losses she actually suffered as a result of defendants' contemptuous conduct.

C. EVIDENTIARY HEARING AND FINDINGS

Defendants next argue that the trial court failed to hold an evidentiary hearing on the reasonableness of

the award of attorney fees to plaintiff and failed to make findings with the necessary specificity. We disagree.

In its opinion of May 18, 2006, the trial court found that "Currie's contemptuous behavior led to extended proceedings and directly led to the appointment of monitors and ultimately a receiver." Further, the court specifically referred to the contempt arising out of the mailing, rather than the separate contempt arising out of the improper use of ambassadors. On the basis of these findings, the trial court concluded that all the costs and attorney fees incurred by plaintiff that were "connected with those proceedings, including work relating to appellate proceedings, would be recoverable." The court also determined that the costs of investigating the contempt were recoverable. The court then made findings regarding the amount of fees that were incurred as a result of the contempt.

Although defendants challenged the reasonableness of plaintiff's attorney fees, they did not request a separate evidentiary hearing on the fees. Furthermore, defendants were afforded ample opportunity to contest the reasonableness of the fees at the hearing on plaintiff's renewed motion for attorney fees held on March 31, 2006. Indeed, the trial court accepted an exhibit from defendants on the reasonableness of the $375 hourly rate. Additionally, the trial court had the benefit of two separate briefings by the parties on the issue of attorney fees, which included detailed billings. On the basis of the hearing and the briefings, the trial court made general findings concerning the various expenses that were caused by defendants' contemptuous conduct. These findings sufficiently addressed the reasonableness of the fees. *Maple Hill Apt Co v Stine (On Remand)*, 147 Mich App 687, 693; 382 NW2d 849 (1985). Therefore, defendants' arguments that the trial court's

findings were insufficient and that the trial court erred when it failed to hold an evidentiary hearing on the reasonableness of the fees are without merit.

### D. ATTORNEY FEES UNRELATED TO THE CONTEMPT

Defendants also argue that the appointment of a receiver and monitors "did not flow from the criminal contempt order issued against Jackie Currie." For this reason, defendants contend, the attorney fees plaintiff incurred as a result of those proceedings are not compensable under MCL 600.1721. We agree.

Under MCL 600.1721, the trial court must order a contemnor to indemnify any person who suffers a loss as a result of the contemnor's misconduct. Hence, if Currie's misconduct led to plaintiff's incurring attorney fees, whether those fees were related to the prosecution of the contempt, the investigation of the contempt, or to fashioning a remedy for the contempt, the trial court was required to order defendants to indemnify those fees. Because the formulation of a plan for election oversight and the initial appointment of the monitors was a direct result of the illicit mailing, the trial court did not clearly err in determining that the costs plaintiff incurred in association with the plan and the appointment of the monitors were caused by defendants' contemptuous conduct. However, plaintiff's request for an injunction against the use of ambassadors was primarily based on plaintiff's case-in-chief and was only tenuously connected to the contempt arising out of the mass mailing. Likewise, the violation of the injunction applicable to the ambassadors and the subsequent appointment of receivers were not causally connected to the earlier contempt. Therefore, the trial court clearly erred in finding that the proceedings involving the injunction applicable to the ambassadors were directly

related to defendants' contempt in sending the mass mailing.[6] Accordingly, we vacate the award of attorney fees to the extent that the award included fees not directly related to defendants' making of the mass mailing in violation of the court's order and remand for recalculation of the award.

### E. HOURLY RATE

Finally, defendants contend that the trial court abused its discretion when it determined that $375 an hour was a reasonable rate. We disagree.

The factors to be considered in determining the reasonableness of the award include:

> "(1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client." [*Wood v Detroit Automobile Inter-Ins Exchange*, 413 Mich 573, 588; 321 NW2d 653 (1982) (citation omitted).]

At the hearing held on March 31, 2006, the trial court determined that the $375 an hour fee was reasonable. Indeed, the court stated that plaintiff's attorneys were of the "caliber" of top equity partners from the top firms in Detroit. Further, the court explained that it was familiar with the rates charged by Detroit attorneys of plaintiff's attorneys' experience and expertise and concluded that $375 an hour was very reasonable. In addition, the court noted that at "a certain point in time," the attorneys were providing "around the clock legal services" to plaintiff and had to be at the court's

---

[6] We express no opinion regarding whether and to what extent the trial court could have separately awarded plaintiff attorney fees based on the violation of the injunction barring the use of ambassadors.

dispatch on very short notice. The trial court properly considered the expertise of the attorneys, the going rate for their services in the locality, as well as the time and labor involved in the litigation. In contrast, defendants claimed that the rate was unreasonable because a 2003 article indicated that the median billing rate for all private practitioners in the state of Michigan was $170 an hour. Although the trial court considered the article, it rejected it as outdated and inaccurate. Because the trial court based its decision on appropriate considerations and selected a rate that was within the range of reasonable and principled outcomes, it did not abuse its discretion. *Windemere, supra* at 682.

### VI. CONCLUSION

We affirm the trial court's permanent injunction against the mass mailing of unsolicited applications for absent voter ballots. We also affirm the trial court's ruling that plaintiff was entitled to attorney fees, but vacate the order awarding attorney fees and remand for recalculation of the award in accordance with this opinion. We do not retain jurisdiction.

Whitbeck, C.J., concurred.

Smolenski, P.J. (*concurring in part and dissenting in part*). I concur fully with parts III through V of the majority opinion. However, I do not agree that MCL 168.759 implicitly prohibits clerks from mailing unsolicited applications for absent voter ballots and would not address whether the Detroit City Clerk has the inherent authority to make such a mailing. Because I conclude that the trial court entered the order enjoining the mailings solely on the basis of an erroneous interpretation of MCL 168.759, I would vacate the perma-

nent injunction. Therefore, I respectfully dissent from the analysis in part II of the majority opinion and the decision to affirm the permanent injunction.

This Court reviews a trial court's decision to grant injunctive relief for an abuse of discretion. *Michigan Coalition of State Employee Unions v Civil Service Comm*, 465 Mich 212, 217; 634 NW2d 692 (2001). Where a trial court's decision to grant injunctive relief is based on a misapprehension of the law, an abuse of discretion occurs. *Bynum v ESAB Group, Inc*, 467 Mich 280, 283; 651 NW2d 383 (2002).

MCL 168.759 does not explicitly prohibit a city clerk from mailing unsolicited absent voter ballot applications in a mass mailing. Nevertheless, the trial court determined that MCL 168.759 impliedly barred defendants from sending unsolicited applications for absent voter ballots. In reaching this conclusion, the trial court relied heavily on an application of the maxim *expressio unius est exclusio alterius* to subsections 1 through 3 and 5 of MCL 168.759. However, the proper application of that maxim to those subsections does not result in the conclusion that the Legislature clearly intended to prohibit the unsolicited mailing of applications for an absent voter ballot to the electorate.

The maxim *expressio unius est exclusio alterius*—the expression of one thing is the exclusion of another—is a rule of statutory construction that is the product of logic and common sense. *Feld v Robert & Charles Beauty Salon*, 435 Mich 352, 362; 459 NW2d 279 (1990) (opinion by RILEY, C.J.). The maxim " 'expresses the learning of common experience that when people say one thing they do not mean something else.' " *Id.*, quoting 2A Sands, Sutherland Statutory Construction (4th ed), § 47.24, p 203. Thus, " 'when a statute limits a thing to be done in a particular mode, it includes a

negative of any other mode.' " *Christensen v Harris Co*, 529 US 576, 583; 120 S Ct 1655; 146 L Ed 2d 621 (2000) (citation omitted). However, because this rule of construction infers legislative intent from silence, see *Burns v United States*, 501 US 129, 136; 111 S Ct 2182; 115 L Ed 2d 123 (1991), courts must be careful in their application of the maxim. As Justice Souter warned in his dissent in *Custis v United States*, 511 US 485, 501-502; 114 S Ct 1732; 128 L Ed 2d 517 (1994):

> While "often a valuable servant," the maxim that the inclusion of something negatively implies the exclusion of everything else (*expressio unius*, etc.) is "a dangerous master to follow in the construction of statutes." *Ford v. United States*, 273 U.S. 593, 612, 47 S. Ct. 531, 71 L. Ed. 793 (1927) (internal quotation marks and citation omitted). It rests on the assumption that all omissions in legislative drafting are deliberate, an assumption we know to be false. See Posner, Statutory Interpretation—in the Classroom and in the Courtroom, 50 U. Chi. L. Rev. 800, 813 (1983); Radin, Statutory Interpretation, 43 Harv. L. Rev. 863, 873-874 (1930). As a result, "scholars have long savaged the *expressio* canon," *Cheney R. Co. v ICC*, 284 U.S. App. D.C. 101, 902 F.2d 66, 68 (CADC 1990) (Williams, J.), at least when it is made to do the work of a conclusive presumption, and our decisions support the proposition that "sometimes [the canon] applies and sometimes it does not, and whether it does or does not depends largely on context." R. Dickerson, Interpretation and Application of Statutes 47 (1975); see also *id.*, at 234-235.

The maxim only properly applies "when in the natural association of ideas in the mind of the reader that which is expressed is so set over by way of strong contrast to that which is omitted that the contrast enforces the affirmative inference that that which is omitted must be intended to have opposite and contrary treatment." *Ford, supra* at 611.

MCL 168.759(1) provides that an elector "may apply for an absent voter ballot" during a specified period before a primary or an election and MCL 168.759(2) requires the elector to "apply in person or by mail with the clerk of the township, city, or village in which the elector is registered." Hence, under the plain language of these two statutory provisions, an elector may only request an absent voter *ballot* during the specified period and must request the *ballot* by mail or in person. These sections do not address the time within which, or the manner by which, an elector may obtain an *application* for an absent voter ballot. Because these two sections deal with the procedures for requesting an absent voter ballot rather than the procedures for requesting an application for an absent voter ballot, these sections cannot support an implicit limitation on the distribution of applications for absent voter ballots. *Christensen, supra* at 583.

Likewise, MCL 168.759(3) cannot be read to limit the manner by which *applications* for an absent voter ballot are distributed. This section provides:

> An application for an absent voter ballot under this section may be made in any of the following ways:
>
> (a) By a written request signed by the voter stating the statutory grounds for making the application.
>
> (b) On an absent voter ballot application form provided for that purpose by the clerk of the city, township, or village.
>
> (c) On a federal postcard application.

Although this section refers to an "application for an absent voter ballot," it is clear from the context that the section deals with the manner by which a voter may

request an *absent voter ballot*.[1] In order to properly request an absent voter ballot, as opposed to an application for an absent voter ballot, an elector must request the *absent voter ballot* during the requisite period by mail or in person, see MCL 168.759(1) and (2), and may do so: (1) by a written request signed by the voter stating the statutory grounds for making the application, or (2) on an absent voter ballot application form provided for that purpose by the clerk of the city, township, or village, or (3) on a federal postcard application, MCL 168.759(3)(a) to (c). As was true with §§ 759(1) and (2), because § 759(3) applies to the manner by which an elector may request an *absent voter ballot*, rather than the manner by which an elector may request an *application* for an absent voter ballot, application of the maxim to § 759(3) does not support an implicit limitation of the manner by which applications for an absent voter ballot may be distributed. At most, application of the maxim results in the conclusion that a voter who wishes to receive an absent voter ballot may only make the request for a absent voter ballot in one of the three enumerated ways. *Christensen*, *supra* at 583.

MCL 168.759(5) provides, in relevant part, that "[t]he clerk of the city, township, or village shall have absent voter ballot application forms available in the office of the clerk at all times and shall furnish an absent voter ballot application form to anyone upon a verbal or written request." Section 759(5) establishes two duties for clerks. First, the clerk must have applications for absent voter ballots available in the clerk's office at all times. Second, the clerk has a duty to

---

[1] Hence, the initial reference to an "application for an absent voter ballot" under MCL 168.759(3) must be understood in this context. That is, the application process must be distinguished from the "application form" that is provided by the clerk.

provide an application to anyone upon verbal or written request. Although the section clearly addresses the distribution of *applications* for absent voter ballots, application of the maxim does not support an inference that a clerk may not distribute applications except upon the verbal or written request of a person. Rather, the reasonable inference to be drawn from application of the maxim is that a clerk is only *required* to distribute applications when a person makes a verbal or written request. That is, the clerk is *not required* to distribute applications under any other circumstances. There simply is no contrast from which one might infer that the Legislature, by its silence, intended to prohibit clerks from providing applications for absent voter ballots to persons without an oral or written request.[2] *Ford, supra* at 611. To conclude otherwise would be to judicially amend MCL 168.759(5) to read that city, township, or village clerks "shall *only* furnish an absent voter ballot application form" to a person on verbal or written request. Whether to limit the distribution of applications in this way is a decision better left to the legislative process.

Finally, because the trial court did not rely on the clerk's lack of inherent authority as a basis for exercising its discretion to grant the permanent injunction, whether the trial court could have properly entered a permanent injunction against the mailing of unsolicited applications for absent voter ballots on that basis is not properly before this Court. *Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999). For this reason, I would express no opinion regarding whether the Detroit City Clerk has the inherent authority to mail unsolicited applications for absent voter ballots.

---

[2] This is in stark contrast to MCL 168.759(7), which clearly contemplates that any "person" may print and distribute absent voter ballot applications.

Because the trial court based its decision to permanently enjoin the mailing on a misapprehension of law, the trial court abused its discretion. *Bynum, supra* at 283. Therefore, I would vacate the permanent injunction. In all other respects, I concur with the majority.