# STATE OF MICHIGAN

# COURT OF APPEALS

GREGORY D. HANLEY,

Plaintiff-Appellee,

v

PAMELA ANN SEYMOUR, formerly known as
PAMELA HANLEY,

Defendant-Appellant.

UNPUBLISHED
October 26, 2017

No. 334400
Oakland Circuit Court
Family Division
LC No. 2010-777620-DM

Before: BORRELLO, P.J., and MURPHY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right the order finding her in criminal contempt for violation of a protective order and the judgment of divorce. The trial court sentenced defendant to 93 days in the county jail for contempt, imposed a fine of $7,500 pursuant to MCL 600.1715, and ordered defendant to pay $15,000 in attorney fees to plaintiff and to also reimburse plaintiff $2,625 for costs incurred. We affirm.

"A trial court's findings in a contempt proceeding are reviewed for clear error and must be affirmed on appeal if there is competent evidence to support them." *In re Contempt of Henry*, 282 Mich App 656, 668; 765 NW2d 44 (2009). We are not permitted to weigh the evidence or assess the credibility of the witnesses in determining whether there was competent evidence to support the findings. *Id.* at 668-669. Clear error exists when the appellate court is left with the firm and definite conviction that a mistake was made. *Id.* at 669. The ultimate decision to issue a contempt order rests in the sound discretion of the trial court, which we review for an abuse of discretion. *Id.* at 671. "If the trial court's decision results in an outcome within the range of principled outcomes, it has not abused its discretion." *Id.*

Contempt of court encompasses willful acts, omissions, or statements that tend to impair the authority or impede the functioning of a court. *In re Contempt of Dudzinski*, 257 Mich App 96, 108; 667 NW2d 68 (2003); *In re Contempt of Robertson*, 209 Mich App 433, 436; 531 NW2d 763 (1995). "Courts have inherent independent authority, as well as statutory authority, to punish a person for contempt." *Robertson*, 209 Mich App at 436. Pursuant to MCL 600.1701(g), a court is authorized to hold a party in contempt of court "for disobeying any lawful order, decree, or process of the court." "A party must obey an order entered by a court with

-1-

proper jurisdiction, even if the order is clearly incorrect, or the party must face the risk of being held in contempt and possibly being ordered to comply with the order at a later date." *Kirby v Mich High Sch Athletic Ass'n*, 459 Mich 23, 40; 585 NW2d 290 (1998). The main purpose of a court's contempt authority is to sustain the power and preserve the effectiveness of the court. *Dudzinski*, 257 Mich App at 108. Punishment for contempt is proper when necessary to restore order in the courtroom or to ensure respect for the judicial process. *Id.* at 108-109.

Defendant's actions constituted criminal contempt of court, as opposed to civil contempt. See *In re Contempt of Rochlin*, 186 Mich App 639, 644-648; 465 NW2d 388 (1990) (criminal contempt concerns punishment for a completed act of disobedience, so as to vindicate the authority of the court, whereas civil contempt regards a coercive effort by a court to force a noncompliant party to do an act that was commanded by the court). "When any contempt is committed other than in the immediate view and presence of the court, the court may punish it . . . after proof of the facts charged has been made by affidavit or other method and opportunity has been given to defend." MCL 600.1711(2); see also MCR 3.606(A). "[P]unishment for contempt may be a fine of not more than $7,500.00, or imprisonment which, except in those cases where the commitment is for the omission to perform an act or duty which is still within the power of the person to perform, shall not exceed 93 days, or both, in the discretion of the court." MCL 600.1715(1). "A party charged with criminal contempt is presumed innocent, enjoys the right against self-incrimination, and the contempt must be proven beyond a reasonable doubt." *Porter v Porter*, 285 Mich App 450, 456; 776 NW2d 377 (2009).

During the parties' divorce litigation, a stipulated protective order was entered in April 2011, which mutually prohibited the parties from disclosing personal or business financial information revealed and shared during the discovery process; the information could only be used for purposes of the litigation. A judgment of divorce was entered in January 2012, which provided:

> IT IS FURTHER ORDERED that neither party will have any deliberate contacts with the other party's clients, adversaries, and business associates, and in all events neither party will disparage the other in any communication with the other's clients, adversaries and business associates.[1]

Shortly after the divorce action was concluded, defendant filed a request for investigation with the Attorney Grievance Commission as to plaintiff, who is an attorney, alleging numerous unlawful, unethical, or improper financial dealings by plaintiff, and apparently utilizing some information previously gleaned through discovery. The grievance was dismissed. Moving forward to 2015, plaintiff's current wife was sued by her former stepson, David Sachs, in a collections action, and plaintiff represented her in that suit. There was evidence presented that after initiation of the suit, defendant mailed an envelope to the attorney representing Sachs. The envelope contained a letter wherein defendant again accused plaintiff of numerous unlawful,

---

[1] We note that the divorce judgment was a consent judgment, agreed to by the parties. Defendant does not argue that the protective order or the pertinent provision in the judgment of divorce is unlawful or unenforceable.

unethical, or improper financial dealings. Defendant also set forth many disparaging statements about plaintiff's current wife. The envelope additionally included a second document comprised of 2011 emails, post entry of the protective order, sent by plaintiff's current wife to plaintiff's office manager concerning a wire transfer of money. There was also evidence that defendant had communicated the disparaging information to Sachs's attorney in an initial phone call. Sachs's attorney testified to these matters in the contempt hearing, and a handwriting expert opined that defendant was the author of the letter sent to the attorney. Plaintiff testified in the contempt hearing that all of defendant's claims and accusations were false and defamatory. Defendant did not testify at the contempt hearing, invoking her Fifth Amendment privilege against self-incrimination. It is defendant's communications and correspondence to Sachs's attorney that formed the basis for the contempt action at issue. The trial court ruled that the communications and correspondence violated the 2011 protective order and the above-quoted provision in the judgment of divorce.

On appeal, defendant makes a somewhat unusual sufficiency argument. She first maintains that she had never *previously* been held in contempt for violating, nor had she *previously* violated, the protective order and judgment of divorce. This argument is irrelevant to the question whether there was sufficient evidence to support the contempt ruling that is the subject of this appeal. The argument virtually constitutes an implicit concession that, on the particular occasion involving the communications to Sachs's attorney, defendant did violate the protective order and divorce judgment. Defendant next argues that most of the disparaging information communicated to Sachs's attorney pertained to plaintiff's current wife and not plaintiff. However, she acknowledges that some of the information did concern plaintiff, which is certainly accurate, and there is no dispute that this information was extremely disparaging of plaintiff. Accordingly, this argument fails. Finally, with respect to defendant's sufficiency argument, she claims that there was no evidence that she was aware of the fact that plaintiff was representing his current wife when defendant contacted Sachs's attorney, which evidentiary failure is critical because the divorce judgment prohibited deliberate contacts with the other party's adversaries and defendant had no knowledge that Sachs's attorney was an adversary. The evidence clearly showed that defendant was aware of the litigation against plaintiff's current wife and that she knew that Sachs's attorney represented Sachs in suing plaintiff's wife. Given that defendant sent Sachs's attorney damaging and disparaging information regarding *both* plaintiff and plaintiff's current wife, one could reasonably infer that defendant knew that plaintiff was involved in the lawsuit as counsel for his wife. Furthermore, given that Sachs's attorney was litigating a claim against plaintiff's *current wife*, the attorney could still reasonably be characterized as an adversary of plaintiff because of the marital relationship, even if plaintiff had not actually been representing his wife. In sum, there was sufficient evidence to support the contempt ruling and the underlying finding that defendant willfully disobeyed lawful court orders.

Next, defendant argues that the trial court erred in imposing the maximum punishment allowed by law, i.e., 93 days in jail, a $7,500 fine, and $15,000 in attorney fees, see MCL 600.1715(1); MCL 600.1721, considering that defendant had not previously violated the protective order or judgment of divorce; the punishment was excessive. Defendant fails to explain or set forth the *legal* predicate for her claim, such as cruel and unusual punishment or disproportionality. Indeed, defendant provides no authority for the proposition that the maximum punishment for contempt cannot be imposed for an initial act of contempt. Even

assuming that defendant had never previously acted contemptuously, which plainly is not the case, the contemptuous conduct for which she was punished was particularly egregious, justifying the punishment imposed. "Imprisonment for criminal contempt is appropriate where a defendant does something he was ordered not to do." *Dudzinski*, 257 Mich App at 108. Defendant also claims that the punishment was excessive because plaintiff did not suffer any adverse consequences from defendant's behavior. First, this argument ignores the defamatory and damaging nature of defendant's communications, let alone the fact that defendant's contemptuous conduct forced plaintiff to spend time and resources to address the conduct. Regardless, as mentioned earlier, the main purpose of a court's contempt authority is to sustain the power and preserve the effectiveness of the court, along with ensuring respect for the judicial process. *Id.* at 108-109. The punishment imposed in this case was thus appropriate even if defendant did not suffer any adverse consequences. There was no error or abuse of discretion.

Next, defendant contends that the award of $15,000 in attorney fees to plaintiff as a sanction for the contempt constituted error, given that plaintiff had the burden of proof to establish the existence and reasonableness of those fees and failed to do so. Defendant initially and correctly acknowledges that a court is authorized to order the payment of attorney fees in a contempt case so as to indemnify a party that has sustained a loss resulting from the contemptuous conduct. See MCL 600.1721; MCR 3.206(C)(2)(b); *Richards v Richards*, 310 Mich App 683, 700-702; 874 NW2d 704 (2015); *Taylor v Currie*, 277 Mich App 85, 100; 743 NW2d 571 (2007). Plaintiff testified that his attorney in the contempt proceedings charged him a $15,000 set or flat fee for the representation, and there was no evidence to the contrary. We initially note that MCL 600.1721 authorizes the payment of attorney fees as punishment for losses *actually* suffered. *Taylor*, 277 Mich App at 100. Moreover, at no time during the contempt proceedings did defendant challenge the reasonableness of the $15,000 being requested by plaintiff, nor did she request an evidentiary hearing on the matter. As this Court has stated, "[o]bjection to the reasonableness of the amount of an award of attorney fees may not be raised for the first time on appeal[,]" and "[a]ccordingly, this issue is not properly before us." *Jansen v Jansen*, 205 Mich App 169, 173; 517 NW2d 275 (1994). Reversal is unwarranted.

Next, defendant argues that plaintiff had unclean hands, where he obtained the contemptuous materials during mediation in the litigation between Sachs and plaintiff's current wife and then disclosed the materials in the contempt proceedings, thereby violating MCR 2.412(C). MCR 2.412(C) provides:

> Mediation communications are confidential. They are not subject to discovery, are not admissible in a proceeding, and may not be disclosed to anyone other than mediation participants except as provided in subrule (D).

Simply put, defendant's argument is a red herring. Plaintiff testified that the disparaging communications received by Sachs's attorney from defendant were not part of the mediation proceedings. Rather, plaintiff was simply made aware of the communications at the conclusion of the mediation in which he participated with Sachs's attorney. And, Sachs's attorney had received the relevant telephone call and documents well before mediation was conducted; they did not constitute mediation communications for purposes of MCR 2.412(C). Consequently, there was no violation of MCR 2.412(C).

In her reply brief, defendant challenges the content of plaintiff's appellate brief, asserting that he includes information pertaining to other events that were not part of the record or not relevant. Notably, defendant did not file a motion to strike plaintiff's appellate brief premised on its alleged nonconformity. See MCR 7.212(I). Additionally, the trial court had the authority to take judicial notice of the entire record, which encompasses the divorce litigation and earlier postjudgment matters. *Snider v Dunn*, 33 Mich App 619, 625; 190 NW2d 299 (1971). Regardless, we have not relied on the objected to information in resolving this appeal.

Affirmed. Having fully prevailed on appeal, plaintiff is awarded taxable costs under MCR 7.219.

/s/ Stephen L. Borrello
/s/ William B. Murphy
/s/ Amy Ronayne Krause