*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LYNN BETH BAUM,

Plaintiff-Appellant,

v

DAVID BAUM, DAVID M. BAUM, PC, DB
ACQUISITION, LLC, DAVID M. BAUM
REVOCABLE TRUST, MADISON EQUITIES
LLC, N.W. PROPERTIES, LLC, and FRASER
EQUITIES, LLC,

Defendants,

and

HOWARD BAUM and ALLIANCE EQUITIES,
LLC,

Defendants-Appellees.

UNPUBLISHED
April 11, 2024

No. 363346
Oakland Circuit Court
LC No. 2015-149725-CZ

Before: CAVANAGH, P.J., and K. F. KELLY and RICK, JJ.

PER CURIAM.

This case involves criminal contempt proceedings that arose after plaintiff, Lynn Beth Baum, attempted to recover funds that her husband, David Baum, transferred to his brother, Howard Baum, and to Howard's companies in contemplation of Lynn and David's divorce. Lynn appeals as of right the trial court's order awarding her $0 in restitution.[1] We affirm.

---

[1] To the extent that the order appealed is not a final order under MCR 7.202(6), we consider Lynn's claim of appeal to be an application for leave to appeal and grant the application. See *Madson v Jaso*, 499 Mich 960 (2016); *Wardell v Hincka*, 297 Mich App 127, 133 n 1; 822 NW2d 278 (2012).

This case has a lengthy procedural history, including several prior appeals. This Court's prior opinion in *Baum v Baum*, unpublished per curiam opinion of the Court of Appeals, issued May 26, 2022 (Docket Nos. 355489; 355491), pp 3-4, contains the following summary of the pertinent background relevant to this appeal:

In contemplation of his divorce from Lynn, David transferred marital funds to his brother, Howard. Lynn filed a fraudulent-transfer claim, which proceeded to a jury trial. Following the trial, a jury found that David had fraudulently transferred $240,583.90 to Madison Equities and $771,451.76 to Fraser Equities. Thereafter, Lynn moved for entry of judgment against Howard, Madison Equities, and Fraser Equities (the Howard defendants) in the amount of $1,159,737.23. She also requested an injunction prohibiting any of the Howard defendants from transferring any of its assets until satisfaction of the judgment. . . . [O]n December 17, 2018, the court entered an injunction prohibiting "further disposition by the debtor, David Baum[,] and the transferees, Howard Baum, Madison Equities, LLC and Frasier [sic] Equities, LLC for the assets transferred or of their other property." Subsequently, on March 20, 2019, . . . the court entered an opinion and judgment that awarded Lynn $982,927.08 as to Fraser.

On August 19, 2019, Lynn moved to require the Howard defendants to show cause why they should not be held in contempt for violating the December 17, 2018 injunction. Lynn asserted that four months after entry of the injunction and two days after entry of the trial court's March 20, 2019 judgment, Fraser violated the injunction by selling real property for $680,000. . . .[2]

. . . [The trial court] on November 14, 2019 entered the following injunction:

[A]n injunction is issued against Alliance and Howard Baum, their officers, agents, servants, employees, and attorneys, and on those persons in active concert or participation with them who receive

---

[2] As relevant to this appeal, Fraser had $517,049.62 of the $680,000 sale proceeds applied to a debt of Alliance. Thus, instead of receiving $621,930.59 in cash, Fraser, against which Lynn had a judgment, only received $104,880.97 in cash after the sale. The $517,049.62 paid off Fraser's guaranty obligation on an $800,000 loan that Alliance had.

Fraser paid the $517,000 even though that amount was in excess of its listed maximum guaranty amount of $400,000. Further, it does not appear that any actual obligation to pay existed at the time Fraser made the payment. Under the terms of Fraser's Limited Guaranty Agreement, its obligation would not arise "unless or until the [Alliance] Warehouse is sold and the proceeds of such sale are insufficient to pay the Indebtedness in full." In short, because the Alliance Warehouse had not sold yet at the time of the $517,000 payment, there was no obligation for Fraser to pay anything, and in any event, it paid more than what it had agreed it would be liable for. This transaction was the basis for subsequent proceedings supplemental to judgment, in which the trial court ultimately ruled that the $517,000 payment was void and entered a judgment in favor of Lynn against Alliance.

> actual notice of the order by personal service or otherwise, forbidding them to make or suffer any transfer or other disposition of, or to interfere with, any property belonging to the Judgment Debtors [Fraser Equities and Madison Equities], or to which they may be entitled or which may thereafter be acquired by or become due to said Judgement Debtors, or to pay over or otherwise dispose of any moneys due or to become due to such Judgment Debtors, . . . .
>
> On January 3, 2020, Lynn filed a motion for entry of [an] order requiring Howard and Alliance Equities to appear and show cause why they should not be held in contempt for violating the court's November 14, 2019 injunction. Lynn argued that both Howard and Alliance violated the court's order because the same day the order was entered, Howard withdrew $370,000 from Alliance's bank account. Lynn maintained that Howard should be held responsible individually and as the sole member of Alliance.
>
> After granting Lynn's motion to show cause as to Howard and Alliance, the court held a hearing on February 28, 2020, regarding whether Howard and Alliance intentionally violated the court's November 14, 2019 order. Lynn introduced evidence, including Howard's admissions, that showed that Alliance had issued a cashier's check in the amount of $370,000 approximately 45 minutes after the trial court issued the November 14, 2019 injunction. The check was drawn from Alliance's funds and was made out to Alliance. Howard's and Alliance's defense was that because the check was made out to Alliance and was still under Alliance's control, there was no "transfer" in violation of the court's order.

After the conclusion of the hearing, the trial court ordered Howard to deliver the $370,000 to the clerk of the court, which Howard eventually did.

The trial court ultimately found that "both Howard and Alliance had 'willfully disregarded and/or disobeyed' the November 14, 2019 injunctive order." *Id*. at 4. "In its opinions and orders finding Howard and Alliance in criminal contempt, the trial court sentenced them, in pertinent part to 'pay for restitution to Lynn Baum pursuant to MCL 771.3(1)(e), MCL 600.1721 and *Taylor v Currie*, 277 Mich App 85; 743 NW2d 571 (2008).' " *Baum*, unpub op at 12 (brackets omitted). This Court affirmed the determinations of contempt and the imposition of restitution. *Id*. at 6-14.

While the prior appeal was pending in this Court, Lynn moved in the trial court for partial quantification of restitution against Howard and Alliance. In addition to requesting attorney fees and costs, Lynn sought an award in excess of $1.5 million in restitution. Lynn argued that Howard was liable for statutory conversion by having Fraser pay $517,049.62 for Alliance's debt, which entitled her to treble damages, resulting in her $1.5 million request.

At the ensuing motion hearing, the trial court limited its consideration of restitution to the contemptuous conduct, i.e., Howard's withdrawal of $370,000 from Alliance's bank account in the form of a cashier's check made out to Alliance. The court concluded that Lynn failed to prove that she suffered any actual loss or injury by virtue of the $370,000 withdrawal, and therefore,

awarded $0 in restitution. However, the court ruled that attorney fees may yet still be recoverable and set the matter for an evidentiary hearing regarding attorney fees.

Lynn now appeals, challenging the trial court's award of $0 in restitution.

## I. STANDARD OF REVIEW

We review a trial court's factual findings for clear error and its calculation of restitution for an abuse of discretion. *People v Bryant*, 319 Mich App 207, 210; 900 NW2d 360 (2017). A finding is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake was made. *People v Lee*, 314 Mich App 266, 272; 886 NW2d 185 (2016). A trial court abuses its discretion when it chooses an outcome falling outside the range of principled outcomes. *Id.* However, when the question of restitution involves a matter of statutory interpretation, the interpretation is reviewed de novo. *People v Gubachy*, 272 Mich App 706, 708; 728 NW2d 891 (2006).

## II. ANALYSIS

Lynn argues that the trial court erred when it awarded her $0 in restitution. We disagree.

The trial court initially ruled that pursuant to MCL 771.3(1)(e), MCL 600.1721, and *Taylor*, 277 Mich App 85, Lynn was eligible to receive restitution for Howard and Alliance's contemptuous behavior of transferring the $370,000 from Alliance's bank account. Lynn thereafter moved for partial quantification of the amount of restitution she was owed. In her motion, she sought restitution under a statutory conversion theory in the amount of $1,551,148.16, which is treble the $517,049.62 amount that Fraser paid toward Alliance's debt. After limiting the scope of restitution to the contemptuous conduct of transferring the $370,000, the trial court ruled that Lynn had not demonstrated that she suffered an actual loss or injury as a result of that conduct, and therefore, she was not entitled to restitution.

Lynn on appeal relies on MCL 600.1721 as the basis for awarding her restitution. MCL 600.1721 provides:

> *If the alleged misconduct has caused an actual loss or injury to any person* the court shall order the defendant to pay such person a sufficient sum to indemnify him, in addition to the other penalties which are imposed upon the defendant. The payment and acceptance of this sum is an absolute bar to any action by the aggrieved party to recover damages for the loss or injury. [Emphasis added.]

The trial court determined that because Lynn had not suffered any actual loss or injury, she was not entitled to restitution. The first sentence of MCL 600.1721 plainly provides that the court is to order indemnification "[i]f the alleged misconduct has caused an actual loss or injury[.]" The use of "if" sets up a condition that must be satisfied in order for the remainder of the provision to take effect. Although Lynn initially attempts to differentiate this principle with criminal restitution, which "requires a direct, causal relationship between the conduct underlying the convicted offense and the amount of restriction to be awarded," *People v McKinley*, 496 Mich 410, 421; 852 NW2d 770 (2014), she ultimately concedes that in order to recover under MCL 600.1721, she must have suffered an actual loss or injury caused by Howard and Alliance's misconduct, but

-4-

qualifies it by averring that noneconomic losses satisfy that requirement as well. She further states in her reply brief that no direct evidence is needed to prove that she suffered emotional harm.

In our view, to resolve this appeal we must determine whether the trial court clearly erred by finding that Lynn did not suffer "an actual loss or injury" We hold that the trial court did not err.

At the hearing below and on appeal, Lynn offers no concrete position on how she was injured. Instead, she seemingly primarily relies on her view that Howard and Alliance's action constituted conversion, both common law and statutory, MCL 600.2919a. Taking this position, together with her position in her reply brief focusing on noneconomic damages, we infer that Lynn's ultimate position is that she suffered a noneconomic injury by virtue of the conversion.

Lynn acknowledges that for her to have a successful claim of conversion, she must have a property interest in the $370,000 at issue. See *Foremost Ins Co v Allstate Ins Co*, 439 Mich 378, 391; 486 NW2d 600 (1992) (stating that for conversion, the act of dominion wrongfully asserted must be "over another's personal property"). But at the hearing, Lynn offered no evidence or argument that she had a property interest in the $370,000 that had been in Alliance's bank account. Lynn even admitted on cross-examination that she was unaware of any civil proceeding establishing that Alliance owed her money.

On appeal, Lynn claims that she did have an interest in the $370,000 on account of her chose in action and through the proceedings supplemental to judgment. But these arguments were not raised in the trial court and therefore are waived. See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359090); slip op at 4-5. Regardless, we are not persuaded by Lynn's reliance on her chose in action.

> A "chose in action" is a " 'right to personal things of which the owner has not the possession, but merely a right of action for their possession.' " *City of Holland v Fillmore Twp*, 363 Mich 38, 43; 108 NW2d 840 (1961), quoting *Black's Law Dictionary* (4th ed), p 305. A "thing in action" is synonymous with a "chose in action." See *Powers v Fisher*, 279 Mich 442, 448-449; 272 NW 737 (1937). See also *Ballentine's Law Dictionary* (3d ed), defining "chose in action" as "the right of a creditor to be paid; a right not reduced to possession but recoverable by bringing and maintaining an action," and "thing in action" as the "same as chose in action." [*Burkhardt v Bailey*, 260 Mich App 636, 654 n 9; 680 NW2d 453 (2004).]

Thus, a chose in action merely gives the person a *right to bring claims* for the recovery of property. In other words, acquiring a chose in action does not mean acquiring an actual property right in the underlying property itself. Such a right must be perfected through legal proceedings. Because Lynn did not have a property right in the $370,000 funds, the withdrawal of those funds from Alliance's account cannot be deemed a wrongful exertion "over [Lynn's] personal property," meaning that her claim of conversion is without merit.

Similarly, Lynn's reliance on the order authorizing proceedings supplementary to judgment also is not persuasive. Nowhere in that order did it decree that Lynn had a property interest in any property held by Alliance or that she had a right to the property. Although the order

enjoined Alliance and Howard from transferring or otherwise interfering with "any property belonging to the Judgment Debtors [i.e., Fraser and Madison], or to which they may be entitled or which may thereafter be acquired by or become due to said Judgment Debtors, including the proceeds from the sale of [real estate]," the order never established that any property held by Alliance was Lynn's or owed to her. The order reinforces this because it further authorized Lynn "to file a complaint for proceedings supplementary to judgment," where such a decree could happen.[3]

Accordingly, we are not left with a definite and firm conviction that the trial court made a mistake by finding no loss or injury. Consequently, the trial court did not abuse its discretion when it awarded Lynn $0 in restitution.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly
/s/ Michelle M. Rick

---

[3] Lynn actually did file her petition, and months after the court entered the order appealed in this case, the proceedings supplementary to judgment continued, ultimately resulting in the trial court voiding the $517,049.62 transfer from Fraser to Alliance and entering a judgment in favor of Lynn and against Alliance for that amount (less $50,000 that Lynn was awarded against the lender).

Although Lynn's position ultimately was vindicated, such that she was awarded the money Fraser essentially transferred to Alliance, she cannot rely on this May 31, 2023 judgment as proof that she had a property interest back in November 2019 when the transfer or purported conversion of the $370,000 funds occurred or in September 2021 when the court ruled on her motion for restitution. In other words, the trial court necessarily could only consider the situation as it existed at the time the motion was decided and Lynn had not yet proven an interest in the $370,000 funds.