# STATE OF MICHIGAN

# COURT OF APPEALS

GLENN S. MORRIS and GLENN S. MORRIS TRUST,

Plaintiffs/Counterdefendants-Appellees,

v

R. JUDD SCHNOOR and MADCAP ENTERPRISES, LLC, substituting for MORRIS, SCHNOOR & GREMEL, INC.,

Defendants/Counterplaintiffs/Third-Party Plaintiffs,

and

MORRIS INSURANCE AGENCY,

Third-Party Defendant,

and

DAVID W. CHARRON and CHARRON & HANISCH, PLC,

Appellants.

UNPUBLISHED
August 11, 2016

No. 321925
Kent Circuit Court
LC No. 07-006441-CR

Before: SERVITTO, P.J., and MARKEY and GLEICHER, JJ.

PER CURIAM.

Appellants, David W. Charron and Charron & Hanisch, PLC (hereinafter "Charron"), appeal by right an order granting attorney fees and costs to plaintiffs/counterdefendants, Glenn S. Morris and the Glenn S. Morris Trust (hereinafter "Morris"). We affirm.

Charron contends the trial court's award to Morris of attorney fees and costs incurred as civil contempt sanctions exceeds the trial court's original order because the award includes compensation for time expended outside the contempt trial. He further argues that this Court's 2014 decision, *Morris v Schnoor*, unpublished opinion per curiam of the Court of Appeals, issued May 29, 2014 (Docket Nos. 315006; 315007; 315702; 315742), aff'd on other grounds

-1-

498 Mich 953 (2015), confirms the limitation on the fees and costs that are compensable and comprises the law of the case. Charron contends a distinction exists between the concept of indemnification and that of imposing sanctions for contempt. In particular, Charron argues that much of the time that the trial court compensated was unnecessary given Charron's acknowledgement of sufficient facts to determine whether an act of contempt had occurred and belying the necessity of many of the actions and hours claimed by Morris for reimbursement and as billed by his attorneys for the investigation and prosecution of the alleged acts. Charron also challenges the award of fees and costs associated with efforts expended in defending or pursuing the attorney fee application.

"Generally, to preserve an issue for appellate review, the issue must be raised before and decided by the trial court." *Detroit Leasing Co v Detroit*, 269 Mich App 233, 237; 713 NW2d 269 (2005). On December 27, 2012, the trial court entered an order finding Charron in civil contempt but reserved a ruling on the amount of attorney fees and costs to be awarded pending an evidentiary hearing. Following a five-day evidentiary hearing encompassing arguments regarding the scope and extent of attorney services entitled and the application of a stipulated fee scale, the trial court found Morris to be entitled to an award of $349,416 in attorney fees and $14,090.77 in costs from Charron. Charron filed motions for reconsideration and a new trial, both of which the trial court denied. In general the issues are adequately preserved for appellate review. Charron's argument, however, pertaining to the applicability of the law of the case doctrine is raised for the first time on appeal. As such, the issue is not preserved for appellate review.

As discussed in *Taylor v Currie*, 277 Mich App 85, 99; 743 NW2d 571 (2007) (citations and quotation marks omitted):

> The decision to award attorney fees, and the determination of the reasonableness of the fees requested, is within the discretion of the trial court. If the trial court's decision results in an outcome within the range of principled outcomes, it has not abused its discretion. Any findings of fact on which the trial court bases an award of attorney fees are reviewed for clear error.

Any questions of law pertaining to a contempt proceeding are reviewed de novo. *In re Contempt of Auto Club Ins Ass'n*, 243 Mich App 697, 714; 624 NW2d 443 (2000). "Whether the law of the case doctrine applies is [also] a question that we review de novo." *Shade v Wright*, 291 Mich App 17, 21; 805 NW2d 1 (2010). Unpreserved issues are, however, reviewed for plain error. *Kloian v Schwartz*, 272 Mich App 232, 242; 725 NW2d 671 (2006).

"A trial court has inherent and statutory authority to enforce its orders." *In re Moroun*, 295 Mich App 312, 331; 814 NW2d 319 (2012), citing MCL 600.611; MCL 600.1711; MCL 600.1715. "In civil contempt proceedings, a trial court employs its contempt power to coerce compliance with a present or future obligation, including compliance with a court order, to reimburse the complainant for costs incurred as a result of contemptuous behavior, or both." *Id*. at 331. This Court has discussed the process to be followed in a civil contempt proceeding. Specifically:

When exercising its civil contempt power, the court acts as the factfinder, determines whether there was contempt under a preponderance of the evidence standard, and imposes sanctions if this standard is met. If the contemptuous behavior occurs in front of the court, i.e., it is "direct" contempt, there is no need for a separate hearing before the court imposes any proper sanctions because "all facts necessary to a finding of contempt are within the personal knowledge of the judge." If the contemptuous conduct occurs outside the court's direct view, i.e., it is "indirect" contempt, the court must hold a hearing to determine whether the alleged contemnor actually committed contempt. This hearing must follow the procedures established in MCR 3.606 and afford some measure of due process before the court can determine whether there is sufficient evidence of contempt to warrant sanctions. [*In re Contempt of Auto Club Ins Ass'n*, 243 Mich App at 712-713 (citations and quotation marks omitted).]

In this case, the trial court in its December 27, 2012 opinion and order found Charron to be in civil contempt and stated, in relevant part:

The sanction of compensation for Plaintiff Glenn Morris must be imposed in a manner that reflects economic reality. Here, Plaintiff Glenn Morris logically should receive compensation for loss of value to MSG from the entities that dispossessed him of that value, i.e., MSG and [Charron & Hanisch]. The appropriate sanction for Attorney Charron, in contrast, involves a civil contempt sanction in the form of a compensatory award of attorney fees, other costs, or both, that Plaintiff Glenn Morris incurred in pursuing civil contempt against Attorney Charron. Therefore, the Court shall direct Attorney Charron to compensate Plaintiff Glenn Morris for the attorney fees and costs he incurred in the contempt trial that took place in 2011. This sanction cannot yet be assessed, in part because the Court lacks all of the information necessary to compute that remedy and in part because Attorney Charron is entitled to an evidentiary hearing at which he may challenge the fees and costs claimed by Plaintiff Glenn Morris.

Summarizing its holdings, the trial court further stated, "Attorney David Charron is responsible for the amount of reasonable attorney fees and costs incurred by Plaintiff Glenn Morris in connection with this contempt proceeding."

"A court may issue an order to pay compensation for actual loss or injury caused by a contemnor's misconduct." *In re Contempt of United Stationers Supply Co*, 239 Mich App 496, 500; 608 NW2d 105 (2000). Compensatory civil contempt sanctions are codified in MCL 600.1721, which states:

If the alleged misconduct has caused an actual loss or injury to any person the court shall order the defendant to pay such person a sufficient sum to indemnify him, in addition to the other penalties which are imposed upon the defendant. The payment and acceptance of this sum is an absolute bar to any action by the aggrieved party to recover damages for the loss or injury.

-3-

In other words, " 'sanctions imposed after a finding of civil contempt to remedy past noncompliance with a decree are not to vindicate the court's authority but to make reparation to the injured party and restore the parties to the position they would have held had the injunction been obeyed.' " *Robin Woods, Inc v Woods*, 28 F3d 396, 400 (CA 3, 1994) (citation omitted).

Charron presents a disingenuous argument that the trial court's order explicitly limited the time frame or activities that would encompass sanctionable behavior solely to the award of fees and costs incurred in the contempt trial. In its contempt order, the trial court did state that Charron would be responsible "for the attorney fees and costs he incurred in the contempt trial that took place in 2011." The order, however, contained additional and more expansive language, ruling that, "[t]he appropriate sanction for Attorney Charron . . . involves a civil contempt sanction in the form of a compensatory award of attorney fees, other costs, or both, that Plaintiff Glenn Morris *incurred in pursuing civil contempt* against Attorney Charron." (Emphasis added.) In its concluding remarks, the trial court further stated, "Attorney David Charron is responsible for the amount of reasonable attorney fees and costs incurred by Plaintiff Glenn Morris *in connection with this contempt proceeding*." (Emphasis added.)

It is recognized "that trial courts possess the inherent authority to sanction litigants and their counsel. . . ." *Maldonado v Ford Motor Co*, 476 Mich 372, 376; 719 NW2d 809 (2006). The authority afforded to a trial court arises from "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* "[T]rial courts also have express authority to direct and control the proceedings before them." *Id.*, citing MCL 600.611 ("Circuit Courts have jurisdiction and power to make any order proper to effectuate the circuit courts' jurisdiction and judgments.").

Our Supreme Court has historically recognized "[t]he importance of interpreting words with a proper sensitivity to their context. . . ." *Birznieks v Cooper*, 405 Mich 319, 331 n 12; 275 NW2d 221 (1979). Borrowing from general principles of interpretative analysis, we note it is necessary to "examin[e] the circumstances and the context in order to properly give meaning to the language." *Allison v AEW Capital Mgmt, LLP*, 481 Mich 419, 436; 751 NW2d 8 (2008). Similarly, in the context of statutory interpretation, it is widely recognized that "the words used" constitute "the most reliable indicator of . . . intent and should be interpreted on the basis of their ordinary meaning." *Dep't of Environmental Quality v Worth Twp*, 491 Mich 227, 258; 814 NW2d 646 (2012).

In this instance, the trial court did indicate that it would hold Charron accountable for the fees and costs Morris incurred as a result of the contempt hearing, but it did not limit remuneration to simply those incurred from the actual trial. The trial court, on two occasions within its opinion and order, stated that Charron would be responsible for fees and costs Morris "incurred in pursuing civil contempt" and "in connection with this contempt proceeding." In addition, the trial court expressed its intention to recognize and "reflect[] economic reality." The term "in connection with" is construed as "expansive" and is "used to capture a very wide variety of different relationships[.]" *United States v Loney*, 219 F3d 281, 283-284 (CA 3, 2000). "[T]he phrase 'in connection with' expresses some relationship or association, one that can be satisfied in a number of ways such as a causal or logical relation to other types of relationship. . . . '[N]o simple judicial formula can adequately capture the precise contours of the "in connection with" requirement, particularly in light of the myriad factual contexts in which the phrase might come

into play.' " *Id.* at 284 (citations omitted). Similarly, the trial court's use of the term "proceeding" in conjunction with "contempt" suggests a more expansive or broader definition than the term "trial." For example, the term "proceeding" is defined as "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment" and as "[a]ny procedural means for seeking redress from a tribunal or agency." *Black's Law Dictionary* (10th ed).

The trial court clearly recognized the lengthy and contentious nature of this litigation, having presided over multiple substantive hearings for summary disposition and a trial exceeding 20 days, on a multitude of issues, and which seemed to develop and evolve on an ongoing basis. See *Morris*, unpub op at 4. The trial court further expressed the intent to compensate Morris "in a manner that reflects economic reality," suggesting the recognition that the costs "incurred in pursuing civil contempt" sanctions would exceed those associated solely with the formal trial. Earlier in its ruling when discussing its conclusions of law regarding the repercussions of a finding of civil contempt, the trial court stated that "this contempt proceeding is in the nature of a civil action against the alleged contemnors for compensation for the loss flowing from the alleged violation of the Court's order of August 22, 2008." This is consistent with the understanding that civil contempt sanctions comprise "a compensatory remedy" intended to "compensate the complainant." *Electrical Workers Pension Trust Fund of Local Union #58, IBEW v Gary's Electric Serv Co*, 340 F3d 373, 385 (CA 6, 2003). Hence, premised on the content, context and language of the trial court's opinion and order finding Charron in civil contempt, and considered in conjunction with the recognized purpose and intent regarding the imposition of sanctions for this form of contempt, we conclude that Charron's contention that the damages award must be limited solely to the contempt trial without merit.

Charron also asserts that this Court's prior ruling on appeal supports his position on this issue and constitutes the law of the case. "The law of the case doctrine holds that a ruling by an appellate court on a particular issue binds the appellate court and all lower tribunals with respect to that issue." *Ashker v Ford Motor Co*, 245 Mich App 9, 13; 627 NW2d 1 (2001). In accord with this doctrine, the "previous decision of an appellate court should be followed, even if the decision was erroneous, in order to 'maintain consistency and avoid reconsideration of matters once decided.' " *Prentis Family Foundation, Inc v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 52; 698 NW2d 900 (2005) (citation omitted). Unpreserved issues are, however, reviewed for plain error. *Kloian v Schwartz*, 272 Mich App 232, 242; 725 NW2d 671 (2006). Since this issue was unpreserved, we may review only for plain error.

The language Charron relies on from this Court's prior decision is as follows:

Charron was held liable for "attorney fees and costs . . . incurred in the contempt trial." He was not responsible for attorney fees and costs incurred from the sale of the assets to the contempt proceeding. Hence, neither what transpired during this interim period nor the duration between events impacted the sanction. [*Morris*, unpub op at 10.]

Charron takes this Court's language out of context and is selective in his citation. The entire provision within this Court's ruling stated:

Charron's argument that the time lapse between the trial court and litigants learning of the sale of MSG's assets in December 2008 and the conclusion and ruling of the contempt proceeding has impacted damages suggests a failure to understand both the trial court's contempt ruling and the reasoning followed in determining damages. Charron was held liable for "attorney fees and costs . . . incurred in the contempt trial." He was not responsible for attorney fees and costs incurred from the sale of the assets to the contempt proceeding. Hence, neither what transpired during this interim period nor the duration between events impacted the sanction. Similarly, the sanction imposed against MSG and Charron & Hanisch is calculated to reflect "one-half the value of MSG's assets that were seized by C & H and then transferred through the asset purchase by NYPIA that took place on November of 2008." Hence, there was no accumulation or increase attributable to the amount of the sanctions based on the time lapse between the asset sale and the conclusion of the contempt hearing. [*Id.*]

Charron's argument in the earlier appeal was not the same as what is currently asserted. In the prior appeal, Charron was not asserting error in the trial court's determination of the amount of sanctions to be imposed. In fact, Charron was arguing that the time delay between the issuance of the show cause order for contempt and the actual transfer of the assets, which was the basis for the contempt, had served to enhance or increase the underlying damages. This is a separate and distinct issue from the one currently asserted regarding the determination and calculation of the contempt sanction.

"The law of the case doctrine holds that a ruling by an appellate court on a particular issue binds the appellate court and all lower tribunals with respect to that issue." *KBD & Assoc, Inc v Great Lakes Foam Technologies, Inc*, 295 Mich App 666, 679; 816 NW2d 464 (2012). "[T]he law-of-the-case doctrine only applies to issues actually decided-implicitly or explicitly-on appeal." *Kasben v Hoffman*, 278 Mich App 466, 470; 751 NW2d 520 (2008).

The law of the case doctrine's rationale is to maintain consistency and avoid reconsideration of matters once decided during the course of a single lawsuit; the doctrine does not limit an appellate court's power but, rather, is a discretionary rule of practice. [*Schumacher v Dep't of Natural Resources*, 275 Mich App 121, 128; 737 NW2d 782 (2007) (citation omitted).]

This Court's prior statements do not create the law of the case as they addressed a separate and different argument by Charron. The proper calculation of the sanction for Charron's contempt was not at issue in the earlier appeal. "The doctrine applies to questions specifically decided in an earlier decision and to questions necessarily determined to arrive at that decision." *Webb v Smith*, 224 Mich App 203, 209; 568 NW2d 378 (1997). Because the proper calculation of the civil contempt sanctions was not an issue in the prior appeal, the portion of this Court's ruling that Charron attempts to rely on does not comprise the law of the case for the current issue. Moreover, as we advised above, we review this issue only for plain error as it was unpreserved. Patently, we find none.

Charron further contends the trial court erred in its inclusion of attorney fees and costs incurred in conjunction with the 2009 Uniform Fraudulent Transfer Act claims as part of the

compensation for the contempt associated with the 2007 litigation between the various parties and entities. He also seeks to obfuscate the issue by arguing a distinction between statutory indemnification under MCL 600.1721 and sanctions for contempt.

Acts punishable for contempt are delineated in MCL 600.1701(1). An award of damages arising from the misconduct constituting the contempt is authorized by MCL 600.1721, which provides:

> If the alleged misconduct has caused an actual loss or injury to any person the court shall order the defendant to pay such person a sufficient sum to indemnify him, in addition to the other penalties which are imposed upon the defendant. The payment and acceptance of this sum is an absolute bar to any action by the aggrieved party to recover damages for the loss or injury.

This Court has interpreted the scope of this statutory scheme, stating:

> Under MCL 600.1721, the trial court must order a contemnor to indemnify any person who suffers a loss as a result of the contemnor's misconduct. Hence, if [the contemnor's] misconduct led to plaintiff's incurring attorney fees, whether those fees were related to the prosecution of the contempt, the investigation of the contempt, or to fashioning a remedy for the contempt, the trial court was required to order defendants to indemnify those fees. [*Taylor*, 277 Mich App at 102.]

See also *In re Contempt of Henry*, 282 Mich App 656, 685; 765 NW2d 44 (2009).

The trial court was authorized by both statute and case law to award Morris attorney fees and costs incurred in conjunction with Charron's civil contempt. In challenging some of the billings the trial court approved, Charron does not specifically identify each billing or time entry alleged to be erroneously included by the trial court in its computation. We find it noteworthy that despite the trial court's provision of highlighted identification of the billing entries it approved, Charron has failed to provide any specificity in challenging the approved entries and appears to seek a blanket disavowal from this Court regarding the trial court's very detailed analysis. His assertion is more general in nature and sets forth a two-fold argument (a) that much of the work or hours claimed were unnecessary based on admissions or evidence substantiating the contempt earlier in the litigation or proceedings, and (b) that any of the time or events associated with the 2009 litigation of violations of the Uniform Fraudulent Transfer Act should be eliminated because Charron was not a party or was adjudicated to not have liability under these claims.

Initially, when considering Charron's assertion that the trial court included hours billed for work that was unnecessary in its determination of contempt sanctions, it is important to recognize that the trial court was as involved and as intimately aware of the issues, work and evidence in this case as were the various litigants. The court had presided over approximately nine years of litigation, and there were 1,001 entries in the lower court register of actions. Further, during the five-day evidentiary hearing on this matter, the trial court indicated a willingness and intention to review past the litigation transcripts to verify the relationship between the submitted billings and the events that transpired. The 2009 action involving the

Uniform Fraudulent Transfer Act significantly arose because of Charron's actions that underlie the contempt. In part, because the assets of MSG were transferred, in violation of the trial court's enjoining the sale or transfer of the company assets outside the ordinary course of business without the trial court's authorization, the fraudulent transfer claim arose. See *Morris*, unpub op at 4. Contrary to Charron's implication, the contempt proceeding and the 2009 litigation are not completely independent or unrelated. Notably, the trial court acknowledged the overlap of these matters and specifically indicated in its ruling that it had excluded from the compensation "time spent on discovery and other tasks in ongoing litigation, which did not bear directly upon the contempt matter," and "time devoted to the Uniform Fraudulent Transfer Act claims, all bankruptcy proceedings, and all efforts to settle the parties' disputes through facilitative mediation." In addition, the trial court addressed this concern, stating:

> But Morris has segregated the attorney fees for those two matters [contempt and Uniform Fraudulent Transfer Act (UFTA] claims], and the Court has gone to great pains in reviewing the attorney fees requested by Morris to exclude time that even arguably was spent on the UFTA claims. Therefore, the Court cannot conclude that the aggregate fee computed in this opinion should be reduced to account for the time spent on the development and presentation of the UFTA claims. [Footnote omitted.]

As such, Charron's claim regarding the inclusion of excess time and hours billed in determining the reasonable compensation to Morris is without merit.

Charron also contests the trial court's inclusion of time or costs in the awarded compensation to Morris pertaining to defense of the fee application. In awarding fees for the period identified as encompassing "February 2012 through May 29, 2013," the trial court explained that "the majority of the time billed in this period relates to the presentation of the claim for attorney fees" and it concluded "that most of that time was necessary for 'fashioning a remedy for the contempt.' " The trial court's decision to include compensation for this time period and the work alleged is supported by case law and did not constitute error. As discussed previously, this Court has recognized, in accordance with MCL 600.1721, that "the trial court must order a contemnor to indemnify any person who suffers a loss as a result of the contemnor's conduct," including but not limited to the reimbursement for fees incurred in the "fashioning [of] a remedy for the contempt." *Taylor*, 277 Mich App at 102. The inclusion of these fees did not constitute error.

Next, Charron contends the trial court erred, overcompensating Morris because the hourly rates used to calculate damages did not reflect the actual rates imposed and therefore did not reflect Morris's actual losses.

Before initiation of the evidentiary hearing to determine the contempt sanctions, the parties entered into a stipulation, finding the reasonable hourly fee rates for the professionals involved to be as follows: (a) $385 an hour for principal counsel, (b) $240 an hour for associate counsel, and (c) $130 an hour for a legal assistant. The parties' stipulation was reduced to an order, reflecting the language of the stipulation and the hourly fee rates delineated. Neither the stipulation nor the commensurate order included any limiting language regarding the hourly fees or indicating that they constituted either a floor or a ceiling. During the evidentiary hearing, it

became evident that Morris' counsel had adjusted some of his billings as an accommodation; consequently, the hourly billing rates of the various legal professionals fluctuated and were actually frequently billed at rates below those to which the parties had stipulated to be reasonable fee rates. Because of these billing adjustments, Charron asserted that the stipulated fee rates comprised a maximum or cap and that Morris should be compensated only for the actual amounts billed.

The issue, therefore, becomes the resolution of the apparent tension that arises from the recognition that compensatory sanctions imposed for civil contempt must be based on evidence of a complainant's actual loss, *In re Moroun*, 295 Mich App at 355-356 (FORT HOOD, J. (concurring in part and dissenting in part; citation omitted), as juxtaposed against the principle that "contracts between consenting adults are enforced according to the terms to which the parties themselves agreed." *Lentz v Lentz*, 271 Mich App 465, 471; 721 NW2d 861 (2006).

"Like contracts, stipulated orders are agreements reached by and between the parties." *Phillips v Jordan*, 241 Mich App 17, 21; 614 NW2d 183 (2000). "Stipulated orders that are accepted by the trial court are generally construed under the same rules of construction as contracts." *Id*. A party may assert a contract defense to prevent enforcement of a stipulation. *Limbach v Oakland Co Bd of Co Rd Comm'rs*, 226 Mich App 389, 394; 573 NW2d 336 (1997). Because Charron does not argue any error warranting relief from the stipulation, such as mistake, fraud, or unconscionable advantage, the stipulation is binding. *Id*.

The language of the stipulation and order belies Charron's suggestions of an alternative interpretation of its content. The primary goal in contract interpretation is to "honor the intent of the parties." *UAW-GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 491; 579 NW2d 411 (1998). "A contract must be interpreted according to its plain and ordinary meaning." *Woodington v Shokoohi*, 288 Mich App 352, 373; 792 NW2d 63 (2010). "A contract is ambiguous if it allows two or more reasonable interpretations, or if the provisions cannot be reconciled with each other." *Id*. at 374. "[I]f contractual language is clear, construction of the contract is a question of law for the court." *Id*. Based on the language of the stipulation and order, the parties agreed regarding the reasonable hourly fee rates to be attributed to each professional involved in the litigation for the determination of the contempt sanctions. Given both the absence of any qualifying or limiting language within either the stipulation or the order and the actual and plain language used, we must conclude that Charron's contention that the stipulation reflected merely a maximum or cap is without merit. So, the stipulated hourly billing rates are enforceable.

The enforceability of the stipulated hourly fee rates must next be considered in the context of whether applying them should be precluded because to do so would generate a windfall to Morris and overcompensate him. The predominant case addressing this issue is *Smith v Khouri*, 481 Mich 519; 751 NW2d 472 (2008), which dealt with the determination of reasonable attorney fees to be awarded as case evaluation sanctions. As recognized by *Smith*, "The general 'American rule' is that 'attorney fees are not ordinarily recoverable unless a statute, court rule, or common-law exception provides the contrary.'" *Id.* at 526 (citations omitted). It was further recognized that the consensus is that "the burden of proving the reasonableness of the requested fees rests with the party requesting them." *Id.* at 528-529. In determining a reasonable attorney fee, courts were directed to "consider the totality of special circumstances

-9-

applicable to the case at hand," in conjunction with the factors elucidated in *Wood v Detroit Auto Inter-Ins Exch*, 413 Mich 573 588; 321 NW2d 653 (1982), which include:

> (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client. [*Smith*, 481 Mich at 529, quoting *Wood*, 413 Mich at 588.]

In addition, the *Smith* Court indicated the propriety of the use of the factors contained in Rule 1.5(a) of the Michigan Rules of Professional Conduct to determine what constitutes a reasonable attorney fee. *Smith*, 481 Mich at 530. The *Smith* Court concluded that "[t]he reasonable hourly rate represents the fee customarily charged in the locality for similar legal services, which is reflected by the market rate for the attorney's work." *Smith*, 481 Mich at 531. As such, it was determined that "the goal of awarding attorney fees" for purposes of case evaluation sanctions, "is to reimburse a prevailing party for its 'reasonable' attorney fees; it is not intended to 'replicate exactly the fee an attorney could earn through a private fee arrangement with his client.' " *Id.* at 534.

Charron does not argue that the stipulated hourly fee rates are, per se, unreasonable. Rather, he contends that because the actual charges incurred are less than the stipulated fee rates, the trial court exceeded the indemnification of Morris's actual losses. MCL 600.1721 authorizes the payment of "a sufficient sum to indemnify" a litigant who has suffered a loss based on another party's contempt. Attorney fees incurred are a recognized component of the losses to be indemnified under MCL 600.1721. See *Taylor*, 277 Mich App at 102-103; *In re Contempt of Henry*, 282 Mich App at 685. Further, it is routinely recognized that a trial court is required to determine, when awarding attorney fees, whether those fees are deemed reasonable using identified factors. *Smith*, 481 Mich at 529-530. A trial "court's award will be upheld unless it appears upon appellate review that the trial court's finding on the 'reasonableness' issue was an abuse of discretion." *Wood*, 413 Mich at 588.

The trial court clearly considered the appropriate factors in upholding the stipulation and order regarding the reasonable hourly fee rates to be applied, as evidenced by its conclusion: "The process of establishing the contempt in this case was arduous, and Plaintiff Morris's attorneys carried out their tasks with determination and skill. For that reason, this seemingly exorbitant aggregate attorney fee of $349,416 strikes the Court as eminently reasonable." The evidentiary hearing on attorney fees lasted five days. Spreadsheets delineating the hours billed for specific services and itemized billings were submitted, and there were numerous witnesses. The trial court recognized the high level of skill and performance by both counsel in the underlying litigation. The trial court awarded Morris in excess of $200,000 less than what he had requested for compensation. This Court will not substitute Charron's view of what constitutes a reasonable award when it has not been demonstrated that the trial court abused its discretion.

Finally, Charron suggests that the stipulated reasonable hourly fee rates are inconsistent with compensation under MCL 600.1721 for the actual loss incurred. Charron misconstrues the statutory language. MCL 600.1721 allows for compensation for "alleged misconduct" upon

demonstration of the causation of "an actual loss or injury." The monies to be paid to the victim of the contemptuous behavior or misconduct must be of "a sufficient sum to indemnify him, in addition to the other penalties which are imposed upon the defendant." MCL 600.1721. This does not require, as implied by Charron, a dollar-for-dollar offset. As such, the statutory language does not conflict with the trial court's ultimate determination regarding the sufficiency of the sum to compensate Morris based on a reasonable attorney fee.

We affirm.

/s/ Deborah A. Servitto
/s/ Jane E. Markey
/s/ Elizabeth L. Gleicher